# United States Court of Appeals for the Fifth Circuit

————————

No. 25-60660
Summary Calendar

————————

United States Court of Appeals
Fifth Circuit

**FILED**
June 30, 2026

Lyle W. Cayce
Clerk

Delmy Celina Carrasco-Aguilar,

*Petitioner*,

*versus*

Todd Wallace Blanche, *Acting U.S. Attorney General*,

*Respondent*.

————————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A201 707 357

————————————————————

Before Davis, Jones, and Ho, *Circuit Judges*.

Per Curiam:[*]

Delmy Celina Carrasco-Aguilar, a native and citizen of Honduras, petitions for review of the dismissal by the Board of Immigration Appeals (BIA) of her appeal, which challenged the Immigration Judge's (IJ) denial of her application for asylum and withholding of removal. Carrasco-Aguilar argues the agency erred when it found she had not established past

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

persecution. We find that substantial evidence supports the BIA's decision, so we DENY the petition.

Carrasco-Aguilar arrived in the United States in December 2018, and was issued a Notice to Appear charging her as removable because she was present in the country without being admitted or paroled. Carrasco-Aguilar conceded removability under 8 U.S.C. § 1182(a)(6)(A)(i) then filed an application for asylum and withholding of removal.[1]

At the hearing on the application, Carrasco-Aguilar testified she lived in Choluteca, Honduras from 2002 until 2018. She owned a convenience store and sold minutes for cell phones. In August 2018, two past customers entered the store—armed, with their faces covered—and demanded that Carrasco-Aguilar give them a cell phone with minutes on it. Over the next three months, the two men regularly returned for more cell-phone minutes. After they threatened to kill her, her daughter, and her nephew, Carrasco-Aguilar filed a police report in November 2018. The police took her information, asked additional questions about the incidents, and promised to patrol the area near the store. But Carrasco-Aguilar never saw them do so.

Two days after filing the police report, Carrasco-Aguilar informed the men that she would no longer give them cell-phone minutes. In response, the men trained their pistols on her for the first time, but left when another person entered the store. The men returned after that, but did not brandish their weapons. Five days after filing the police report, Carrasco-Aguilar left

---

[1] Carrasco-Aguilar also applied for protection under the Convention Against Torture (CAT), but the BIA concluded she'd abandoned that claim. Her counseled brief to this court does not dispute the BIA's conclusion, so we deem her application for CAT protection forfeited. *See Lopez-Perez v. Garland*, 35 F.4th 953, 957 n.1 (5th Cir. 2022).

No. 25-60660

for the United States; she fears the men would kill her if she were to return, though concedes she suffered no physical harm while living in Honduras.

In a thorough opinion, the IJ found the asylum application unavailing because Carrasco-Aguilar had not established either past persecution or a well-founded fear of future persecution.[2] Despite crediting Carrasco-Aguilar's testimony, the IJ concluded her account was not sufficiently extreme to support a finding of past persecution under this court's caselaw. The IJ continued that, even if past persecution had been established, Carrasco-Aguilar did not show that persecution was on account of her political opinion or membership in a cognizable particular social group; nor did she prove that the government was unable or unwilling to control the persecution. Finally, the IJ concluded that Carrasco-Aguilar did not have a well-founded fear of future persecution because she'd not shown a cognizable particular social group or proven that it was unreasonable for her to relocate within Honduras. On the latter point, the IJ noted that members of Carrasco-Aguilar's family live in another area of Honduras and have not been threatened or harmed by anyone. The IJ denied withholding for the same reasons that he denied Carrasco-Aguilar's asylum application.

On review, the BIA dismissed Carrasco-Aguilar's appeal for a single reason: it agreed with the IJ that Carrasco-Aguilar's account was not sufficiently extreme to constitute past persecution. It otherwise deemed the issue of future persecution waived because Carrasco-Aguilar did not meaningfully challenge the IJ's ruling on the reasonableness of her relocating within Honduras.

---

[2] *See Gjetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020).

3

No. 25-60660

On appeal of that decision, we limit our analysis to the BIA's determination that Carrasco-Aguilar did not establish past persecution,[3] which is reviewed for substantial evidence.[4] Substantial evidence "is more than a mere scintilla, but means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] Under this standard, a petitioner must show that "the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion."[6]

We find that substantial evidence supports the BIA's conclusion that Carrasco-Aguilar did not establish past persecution.[7] In arguing otherwise, Carrasco-Aguilar primarily relies on our discussion about past persecution in *Tamara-Gomez v. Gonzales*.[8] There, Tamara-Gomez was targeted by FARC[9] for participating in a mission to retrieve the bodies of five police officers whom FARC had murdered. During that mission, Tamara-Gomez was photographed and threatened by a FARC member and, afterwards, he and his family were relentlessly pursued by the group. These sustained threats

--------------------------------

[3] *See Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009) ("We review the BIA's decision and only consider the IJ's decision to the extent that it influenced the BIA.").

[4] *See Urias-Orellana v. Bondi*, 607 U.S. 537, 545 (2026).

[5] *Id.* at 850 (cleaned up).

[6] *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489 (5th Cir. 2015) (cleaned up).

[7] *See, e.g.*, *Gjetani*, 968 F.3d at 397 ("Persecution is often described in the negative: It is not harassment, intimidation, threats, or even assault. Persecution is a specific term that does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." (cleaned up)); *Eduard v. Ashcroft*, 379 F.3d 182, 188 (5th Cir. 2004) (holding harassment, mere threats, and minor violence do not qualify as past persecution).

[8] 447 F.3d 343, 348 (5th Cir. 2006).

[9] FARC is the "narco-terrorist guerrilla group Fuerzas Armadas Revolucionarias de Colombia (the Revolutionary Armed Forces of Colombia)[.]" *Id.* at 345.

culminated in a bombing outside the family home that killed five people and the execution of others who'd participated in the body-retrieval mission with Tamara-Gomez.[10]

*Tamara-Gomez* is distinguishable from this case in kind and degree. Carrasco-Aguilar did not testify to the sort of sustained, organized campaign of intimidation, extortion, and murder that confronted Tamara-Gomez. Rather, she described repeated theft of cell-phone credits from her store, unaccompanied by physical harm or any deprivation of the essentials of life. We acknowledge this pattern of armed robberies might have convinced a different adjudicator that Carrasco-Aguilar had experienced past persecution. But we cannot say the BIA's contrary conclusion is one that *no* reasonable adjudicator could reach, and that is all a substantial-evidence review requires.[11]

Because substantial evidence supports the BIA's decision on past persecution, and because Carrasco-Aguilar does not dispute the BIA's conclusion that she waived the issue of future persecution,[12] the petition for review is DENIED.[13]

---

[10] *See id*. at 346–47.

[11] *See Rubio v. Bondi*, 147 F.4th 568, 577–79 (5th Cir. 2025).

[12] *See Munoz-De Zelaya v. Garland*, 80 F.4th 689, 694 (5th Cir. 2023) (per curiam).

[13] *See Rubio*, 147 F.4th at 581 ("When an alien does not meet the bar for asylum, he also does not meet the standard for withholding of deportation." (cleaned up)).